NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 59

No. 22-AP-063

In re Estate of Miriam Thomas
(Stephen Ankuda, Administrator)

Supreme Court

On Appeal from
Superior Court, Washington Unit,
Civil Division

October Term, 2022

Robert A. Mello, J.

Justin A. Brown, Peter G. Raymond, and Nathan H. Stearns of Sheehey Furlong & Behm P.C., Burlington, for Appellant.

Jacob S. Oblak and Corey F. Wood of Bergeron, Paradis & Fitzpatrick, LLP, Essex Junction, for Appellee.

PRESENT:  Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.    **CARROLL, J.**   Estate administrator, attorney Stephen Ankuda, appeals the civil division's order granting former guardian Paul Thomas's motion to dismiss a decision of the probate division.  The probate division ordered Thomas to reimburse his mother's estate for what it described as damages incurred during his tenure as her financial guardian.  However, the civil division did not have subject-matter jurisdiction because the probate division's order was not a final order.  Accordingly, we vacate the civil division's order and remand to the probate division for further proceedings.

¶ 2.     The record reflects the following. Thomas was appointed financial guardian of his mother's estate in 2010 over his siblings' objection. In 2016, siblings filed motions to remove him as guardian under 14 V.S.A. § 3077 and Vermont Rule of Probate Procedure 67. In March 2018, the probate court concluded that Thomas had breached his fiduciary duties to mother's estate and ordered him removed under Rule 67. Later in 2018, the court appointed Ankuda as successor financial guardian. After mother passed away in April 2019, the court appointed Ankuda as administrator of the estate.

¶ 3.     In August and September 2020, the probate division conducted six days of evidentiary hearings to determine Thomas's potential liability to the estate. In January 2021, the probate division issued its Findings and Order. The court concluded that Thomas was liable to the estate for $1,013,981. In addition, it ordered Thomas to reimburse the estate for attorney's fees and siblings for attorney's fees and litigation costs. The order provided that after the probate division determined "reasonable fees and costs . . . the court will enter a consolidated final judgment."

¶ 4.     Without waiting for final judgment, Thomas appealed, pro se, from the Findings and Order to the civil division. Still pro se, he filed a motion to stay the judgment against him. The civil division granted the motion but noted that "the stay does not apply to the determination of costs/fees which may proceed to conclusion." Thereafter, Thomas, now represented by counsel, filed another motion to stay "pending issuance of a final judgment in case there are any appeal issues to raise with respect to any fees and costs awarded by the [p]robate [d]ivision." The motion alerted the court that the probate division had yet to issue a consolidated final judgment. The court denied this motion, stating that "the order appealed from is sufficiently complete to be a final order."

¶ 5.     In January 2022, the civil division granted Thomas's motion to dismiss the Findings and Order concluding that neither Rule 67 nor 14 V.S.A. § 3077 provided the probate division

2

with jurisdiction to adjudicate damage claims against financial guardians. Moreover, the court concluded that neither Rule 67 nor 14 V.S.A. § 917 authorized the probate division to order sanctions and surcharges after it had removed the guardian, and that the language authorizing sanctions and surcharges did not provide the authority for the court to award compensatory damages resulting from a guardian's malfeasance.

¶ 6.     As administrator, Ankuda now appeals to this Court arguing that the civil division lacked subject-matter jurisdiction to grant Thomas's motion to dismiss, and that even if it had jurisdiction, the statutory framework permitted the probate division to order Thomas to reimburse the estate for losses caused by his fiduciary malfeasance. We agree that the civil division did not have subject-matter jurisdiction.

¶ 7.     " 'Subject[-]matter jurisdiction' refers to the power of a court to hear and determine a general class or category of cases." Lamell Lumber Corp. v. Newstress Int'l, Inc., 2007 VT 83, ¶ 6, 182 Vt. 282, 938 A.2d 1215. A necessary predicate for appellate jurisdiction is the order appealed from must be a final order. In re Trs. of Marjorie T. Palmer Tr., 2018 VT 134, ¶ 29, 209 Vt. 192, 204 A.3d 623 ("An interested party may take an appeal from the probate division to the civil division if the order appealed from is final as to the subject matter before the court." (quotation omitted)). "An order is final if 'the decree or judgment disposed of all matters that should or could properly be settled at the time and in the proceeding then before the court.' " Id. (quoting In re Webster's Est., 117 Vt. 550, 552, 96 A.2d 816, 817 (1953)). Though no statute or rule defines what constitutes a final, appealable probate order, this Court has "frequently treated probate orders as final even where they did not dispose of the entire probate proceeding," because the "proceedings are frequently lengthy and involve a series of decisions on discrete issues that may be appropriate for immediate review." Id. ¶ 30 (collecting cases). Nevertheless, probate division orders are "not final [if] . . . broadly speaking . . . something remained to be done before the subject matter therein involved was finally disposed of and that further proceedings must be

3

had before a final disposition." Webster's Est., 117 Vt. at 552, 96 A.2d at 817; see Palmer Tr., 2018 VT 134, ¶ 32 (concluding that probate order determining heirship was final "because it conclusively determined the discreet issue before the court" and "left nothing to be decided" as to that issue).

¶ 8.     The 2021 Findings and Order was not a final, appealable order because it expressly left issues to be decided before issuing a final judgment order. In other words, it did not dispose "of all matters that should or could" have been properly settled "at the time and in the proceeding then before the court." Webster's Est., 117 Vt. at 552, 96 A.2d at 817. The probate division concluded that Thomas was liable for compensatory damages to the estate and for attorney's fees and litigation costs. The court set a schedule for the estate and siblings to file affidavits detailing fees and costs and for Thomas to object to them, after which it would "enter a consolidated final judgment." Accordingly, we disagree with the civil division that the order was "sufficiently complete to be a final order."

¶ 9.     A previous case in which we dealt with the appealability of orders that did not fully resolve attorney's fees and costs is instructive. See O'Rourke v. Lunde, 2014 VT 88, ¶¶ 13-15, 197 Vt. 360, 104 A.3d 92. O'Rourke involved the dissolution of a limited partnership agreement which required general partner Lunde to liquidate the partnership's assets and distribute the proceeds between himself and the limited partners. After Lunde failed to liquidate the assets in a timely manner, the court appointed a receiver to wind down the partnership's affairs. Following the court's removal of Lunde because of his failure to participate with the receiver, Lunde filed a demand for arbitration. The arbitrator ultimately determined how the proceeds were to be distributed to the partners, and concluded that Lunde was liable for receivership fees, arbitration fees, and attorney's fees, though it made no findings concerning the amount of attorney's fees incurred as a result of the arbitration proceedings. In February 2013, the limited partners sought to have the superior court confirm the arbitration award, and the court directed counsel to prepare

4

a confirmation order. Id. ¶ 9. Lunde thereafter moved to vacate the arbitration award. In May 2013, the superior court denied his motion, confirmed the arbitration award, and directed the limited partners to provide an accounting of attorney's fees. Id. ¶ 12. In August 2013, the court issued a final judgment order resolving all matters, including attorney's fees. Id. Lunde appealed.

¶ 10. The limited partners argued that Lunde's appeal was untimely because it followed the final judgment order, and not, as permitted by state and federal arbitration statutes, from the earlier orders confirming the arbitration award. We held that the statutes did not require an appeal from the confirmation order, but merely allowed such an appeal as "an exception to the general rule that only final judgments may be appealed." Id. ¶ 14. We explained that the superior court's August 2013 order was "a final judgment because it resolved all issues in the case, including the amounts of attorney's fees . . . and costs to be assessed against Lunde." Id. ¶ 15. Thus, Lunde's appeal was timely because it was filed "within thirty days of an appealable final judgment." Id.

¶ 11. Here, the probate division expressly did not issue a final judgment order, but provided that one would follow its final determination of fees and costs against Thomas. It set a two-month schedule for the parties to produce evidence on the matter. Given the length and contentiousness of the proceedings, these fees and costs were unlikely to be insignificant, and very well may have been subject to appeal in their own right. Indeed, Thomas's counsel represented that Thomas sought a stay "in case there are any appeal issues to raise with respect to any fees and costs awarded by the [p]robate [d]ivision." Thomas's appeal from the Findings and Order deprived the civil division—and this Court—from the finality required to adjudicate an issue that was "finally disposed of," and did not require additional "proceedings . . . before a final disposition." Webster's Estate, 117 Vt. at 552, 96 A.2d at 817. In sum, this situation is precisely why we do not review probate proceedings piecemeal. See id. at 553, 96 A.2d at 818.

¶ 12. Palmer Trust, despite his arguments to the contrary, does not help Thomas. 2018 VT 134. In that case, we held that a probate order that determined whether a particular individual

5

was an heir and beneficiary to a trust was a final, appealable order. Id. ¶ 32. We explained that the order "left nothing to be decided with regard to the issue of whether [the individual] was entitled to distribution under the trust." Id. That reasoning does not apply where an order awarding compensatory damages to an estate caused by a malfeasant guardian left open, by its own terms and subject to an express timeline, the determination of attorney's fees and costs following more than a decade of litigation.

¶ 13. Furthermore, none of the cases we collected in Palmer Trust stand for the proposition that a reviewing court can take jurisdiction over a probate order like the one at issue here. See id. ¶ 30. In each case, like Palmer Trust itself, the probate order resolved a "discreet issue[]" that arose in the course of the proceeding. Id. In support of our holding, we cited a Texas Supreme Court case for the proposition that appellate review of " 'controlling, intermediate decisions' " of the probate court is important so that reviewing courts can correct an error that " 'can harm later phases of the proceeding,' " such as the determination of an heir. Id. (quoting De Ayala v. Mackie, 193 S.W.3d 575, 578 (Tex. 2006)). No harm is done to any party by requiring the probate division to determine fees and costs and issue a final judgment order. In fact, any harm lies in addressing the merits of an issue which is not fully resolved—the full extent of Thomas's liabilities.

¶ 14. Likewise, we decline Thomas's invitation to apply In re Peter Val Preda Trusts, 2019 VT 61, 210 Vt. 607, 218 A.3d 27, to the present matter. To the extent he considers Peter Val Preda Trusts as standing for the proposition that we could sua sponte transfer the case from the civil division to this Court, Thomas misunderstands the absolute requirements subject-matter jurisdiction imposes on appellate courts. Subject-matter jurisdiction either exists or it does not, and where it does not, we must proceed no further.* In re Everett's Est., 113 Vt. 265, 267, 33 A.2d

---

* For the same reason, Vermont Rule of Appellate Procedure 2 does not provide an alternative path to reach matters over which this Court has no subject-matter jurisdiction.

6

223 (1943) ("[I]f the trial court was without jurisdiction of the subject matter we are equally without it, and where we find this to be the situation we do not wait for the claim to be made but dismiss the action on our own motion.").

¶ 15. The subject matter in this case involves interrelated questions about the probate division's jurisdictional authority to award compensatory damages to an estate caused by a guardian's malfeasance. Because the probate division has not fully resolved this issue, there was no final appealable order creating subject-matter jurisdiction in the civil division.

The order granting Thomas's motion to dismiss is vacated and the matter is remanded to the probate division to determine reasonable attorney's fees and costs and issue a final judgment order.

FOR THE COURT:

_____

Associate Justice

7